IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA J.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 0812 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, about three years ago in October 2019. (Administrative Record (R.) 192-95). She claimed that she became disabled as of September 28, 2018, due to degenerative disc disease, repetitive stress disorder, hypothyroidism, hypertension, and acid reflux. (R. 192, 225). Over the next two years, the plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) on February 15, 2022. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on February 21, 2022. [Dkt. #9]. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born on December 9, 1959 and was almost 59 years old on her alleged onset date and 61 at the time of the ALJ's decision. (R. 192). She worked fairly steadily from 2011 through 2019. Prior to that her work record was a bit more sporadic. (R. 197-98). Her most recent jobs have been as a housekeeper at a hotel and at homes, and as a home attendant paid by the State of Illinois to babysit her two grandchildren while her daughter worked. (R. 54-55, 199-201, 216). The hotel housekeeping job was light work, the home housekeeping work was medium work, and the babysitting ranged from light work to medium work, depending on the age of the children. (R. 66).

Plaintiff was involved in a motor vehicle accident on September 28, 2018, and sustained whiplash-like injuries to her neck. Upon examination, there was tenderness to palpitation along the cervical spine, mild tenderness to palpitation in the left shoulder, and tenderness to palpation along the thoracic spine. (R. 381-82). X-rays of the left shoulder were normal. (R. 383). CT scan of the cervical spine revealed disc degeneration at the levels of C4-5 and through C6-7, but no disc protrusion or stenosis. (R. 384). Diagnosis was neck strain, shoulder pain of the left shoulder, and strain of the thoracic region; and plaintiff was prescribed Norco for pain. (R. 386).

On October 1, 2018 a followup exam was essentially normal: plaintiff had a steady gait, full range of motion in her neck, full range of motion throughout her lower extremities, but diffuse tenderness to palpation in the paraspinal muscles along her thoracic and lumbar spines. (R. 394). Medication was changed to a short course of muscle relaxers. (R. 394). On October 4, 2018, Plaintiff's treating physician completed a disability request form opining that Plaintiff was unable

to return to work for the next fourteen days. (R. 916).

An October 8, 2018 MRI of the lumbar spine revealed multilevel spondylosis and hypertrophy at multiple levels, disc bulges at L3-L4-L5 resulting in moderate foraminal and mild central canal stenosis, and a disc bulge at L2-3 causing mild foraminal stenosis. (R. 896). A cervical MRI showed multilevel moderate spondylotic changes, a disc bulge at C4-5 causing moderate foraminal and central canal stenosis, a disc bulge with right paracentral herniation at C3-4 causing mild to moderate neural foraminal and central canal stenosis; and a disc bulge at C5-6 causing mild foraminal and central canal stenosis. (R. 897-898).

At an exam on October 29, 2018, there was mild to moderate tenderness along the cervical spine, range of motion was limited and produced pain. Sensory response was decreased at left C6, C7, and C8. Lumbar exam revealed mild to moderate tenderness and limited range of motion. (R. 869).

On November 1, 2018, plaintiff sought treatment for shoulder pain. Examination of right shoulder was normal; left shoulder showed good range of motion and strength, with signs positive for tendinosis. MRI was noted to have shown labral tear. (R. 873).

A February 1, 2019 MRI of the cervical spine showed multilevel spondylotic changes, disc bulge at C3-4 causing mild to moderate neural foraminal/central canal stenosis, disc bulge at C4-5 causing moderate neural foraminal/central canal stenosis, and disc bulge at C5-6 causing mild neural foraminal/central canal stenosis. (R. 862). On February 11, 2019, plaintiff had a medial branch radio frequency lesioning in her cervical spine.

On August 23, 2019, plaintiff had an evaluation of her neck and back with Dr. Pelinkovic. Cervical range of motion was limited to 30 degrees extension, 50 degrees flexion; rotation was 50

3

degrees right and 70 left. As for the lumbar spine, plaintiff was able to bend forward, hyperextend, and bend side to side. Gait and ability to stand on toes was normal. (R. 848). Strength was 5/5 in all extremities, but straight leg raising produced back pain. Neurological exam was normal. (R. 849). X-rays showed decreased lordosis in the cervical spine, disc space narrowing and facet arthrosis at C3-6, normal lordosis in the lumbar spine, and disc space narrowing at L3-4. (R. 849).

In August 2019 plaintiff was having physical therapy three times a week for her left shoulder and elbow pain. At a September 3, 2019 follow up exam, she was noted to have ulnar neuritis and rotator cuff tendinitis or left biceps tendinitis. (R. 913). She had full range of motion in her elbow, with some pain, and wrist. There was pain with resisted abduction on the left shoulder. She was to continue off-work status and physical therapy. (R. 913).

On September 11, 2019, an MRI of the cervical spine showed multilevel spondolytic changes, disc bulges at each level from C3-4 to C6-7 causing mild to moderate neural foraminal and central canal stenosis. (R. 593). Lumbar spine study revealed spondylosis with facet effusions at each level from L3 to S1, disc bulges impinging the thecal sac at each level from L3 to S1, and straighten of lordosis correlating with spasm. (R. 594).

On December 16, 2019, plaintiff saw a podiatrist for complaints of right foot swelling around the ankle. (R. 457). Plaintiff said she had difficulty walking and discomfort wearing shoes. (R. 457). Examination revealed swelling of the right foot and tenderness of the right lateral malleolus. (R. 459. Plaintiff was diagnosed with ligament sprain in her right ankle. (R. 460). On January 24, 2020, Plaintiff was referred by Dr. Dalip Pelinkovic to physical therapy to be completed two to three times weekly for four to six weeks. (R. 914).

On March 7, 2020, plaintiff had a physical consultative examination in connection with her application for benefits. The plaintiff told Dr. Lopez that she began having neck and lower back problems after a motor vehicle accident in August 2018. She treated with physical therapy, epidural injections, and medications. She said her pain was 9-10/10. (R. 576). Plaintiff told the doctor aggravating factors were prolonged sitting and standing, and climbing stairs. Upon examination, Dr. Lopez noted that plaintiff had mild difficulty getting on and off the exam table. Her gait was slightly antalgic with the use of a stick cane. She performed the toe/heel walk with mild difficulty. Grip strength was 5/5 in both hands. Range of motion of the shoulders and cervical spine was only mildly limited. Range of motion in the lumbar spine was limited. Straight leg rasing was negative bilaterally. Motor strength was 5/5 throughout, reflexes and sensation were normal. (R. 578). Dr. Lopez said as to activities of daily living, plaintiff was able to lift, carry, push, and pull objects up to 8 pounds and slowly climb up to five stairs at a time. (R. 579).

On April 4, 2020, plaintiff continued to complain of neck and back pain. Cervical range of motion was limited by about half: 30 degrees extension, 50 degrees flexion, rotation was 50 degrees right and 70 left. (R. 589-90). Sensation was intact with the exception of the C6 dermatomal. Right shoulder range of motion was decreased. Strength was 5/5 in both upper extremities and lower extremities. Gait was normal. There was lower back tenderness and spasm. (R. 590).

Dr. McNally, who had seen plaintiff monthly beginning in June 2020, provided an assessment on October 27, 2020. He noted plaintiff suffered from degenerative disc disease, lumbosacral stenosis, cervical stenosis, and low back and neck pain. He thought the pain would keep her off task more than 25% of the time. She was unable to lift or carry even less than ten pounds. She could sit for less than an hour in an eight hour day and stand/walk less than an hour. She had

5

to lie down for 20 minutes after 5 minutes of activity. (R. 753). When Dr. McNally next saw plaintiff on October 30, 2020, however, he released plaintiff for work on November 2, 2020, without any restrictions. (R. 821-22, 917). At an exam on December 31, 2020, plaintiff had no musculoskeletal complaints. (R. 934).

But, on February 25, 2021, plaintiff again sought treatment for back pain. She had been working as a housekeeper at a hotel and had some stiffness after work and felt worse the next morning. (R. 1128). Exam revealed tenderness in the lumbar region, but range of motion and gait were normal. (R. 1129). X-rays were unremarkable. Neurological exam was normal. Diagnosis was muscle strain. (R. 1131). CT of the lumbar spine revealed very mild lumber curvature to the left, small osteophyte at L4, and minimal narrowing of the L3-4 disc space. (R. 1133).

On July 19, 2021, Dr. Pelinkovic provided a statement as to plaintiff's capacity for work. He noted that he last examined her nine months earlier in October 2020. At that time, he said she complained of pain in her neck radiating to both shoulders and pain in her back radiating to her legs. She complained of numbness in her fingers. (R. 16). Plaintiff declined surgical intervention. Dr. Pelinkovic noted limited range of motion in the cervical and lumbar spine, decreased range of motion in the left shoulder, and weakness in the left biceps. He reported that X-rays of the lumbar spine revealed L3 to S1 facet arthrosis and disc space narrowing, while cervical x-rays revealed decreased disc height space and spurring at C5-C6 and C6-C7 but less at C7-T1. An MRI of the lumbar spine revealed contact of the bilateral L5 nerves, and MRI of the cervical spine revealed contact of the C5 nerve root as well. An EMG revealed mild left ulnar neuropathy. As a result, Dr. Pelinkovic felt plaintiff was unable to work at even a sedentary level or on a part-time basis. (R. 16).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, and a vocational expert testified, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbosacral spine, mild bilateral carpal tunnel syndrome and left ulnar neuropathy, left shoulder supraspinatus tendinosis, focal superior labral tearing, degenerative changes to the acromioclavicular joint, and a lipoma. (R. 23). The ALJ determined a host of other impairments that plaintiff had – including hypertension, hypothyroidism, cysts, hyperlipidemia – were not severe. (R.23-25). The ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on listings 1.15, 1.16, 1.18, and 11.18. (R. 25-26).

The ALJ then determined that plaintiff could perform light work with a number of additional limitations:

> work comprised of more than simple but less than complex tasks that can be learned and mastered in three to six months, requiring no more than occasional operation of foot controls bilaterally, no more than frequent handling, fingering, feeling, and operation of hand controls with the bilateral upper extremities, no more than occasional overhead reaching and frequent reaching in all other directions with the bilateral upper extremities, no more than occasional climbing of ladders, ropes, scaffolds, ramps, and stairs, stooping, kneeling, crouching, and crawling, no more than occasional work at unprotected heights or in the presence of vibration, and no more than frequent work with moving mechanical parts or motor vehicle operation.

(R. 26). The ALJ then briefly summarized plaintiff's allegations, noting that plaintiff testified that she could lift about a gallon of milk, that she has lower back pain when she walks too much that can go up to ten of ten, but is reduced to five or six of ten with pain medication; that her granddaughter

7

helped her tie her shoes and helped her with her hair, and that her sister will shop for her due to the walking involved. (R. 27). The ALJ said that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 27). The ALJ then discussed the medical evidence regarding plaintiff's cervical spine and lumbar spine, left shoulder, and carpal tunnel. (R. 26-31).

The ALJ then reviewed the medical opinions in the record. She noted that the State agency medical consultants reviewed the objective medical evidence and determined that the claimant was capable of light work requiring no more than frequent climbing of ladders, ropes, or scaffolds, stooping, kneeling, crouching, and crawling, which avoided concentrated exposure to heights, hazards, and vibration. The ALJ thought this was consistent with the record at the time, but that additional evidence supported the need for further postural, manipulative, and environmental limitations, as well as a limitation in task complexity. (R. 31). The ALJ noted that the consultative examiner, Dr. Lopez, felt that the plaintiff was capable of slowly walking unassisted, sitting and standing, as well as manipulating objects, lifting/carrying/pushing/pulling objects up to eight pounds in weight, slowly climbing up to five steps at a time, and driving short distances. The ALJ rejected much of the opinion, explaining that the evidence did not consistently document limitations in strength, ambulation, and climbing that would so significantly limit those activities. (R. 32).

Treating orthopedist, Dr. Pelinkovic, opined that plaintiff was medically unable to work, should be off work, or could not do her work duties. The ALJ rejected that opinion because the doctor's assertions were conclusory and lacked any explanation or rationale as to why the plaintiff

8

was unable to work, particularly in light of the fact that the plaintiff was working at the time. (R. 32). The ALJ noted that Dr. Markarian made numerous statements that the plaintiff was temporarily off work from November 2018 through October 2019 – temporary in nature and precede the period at issue. As such, they were of little probative value for the pertinent period, and the doctor thereafter released the plaintiff for work with no restrictions. (R. 32). Finally, the ALJ noted Dr. McNally felt that the plaintiff was medically unable to work and at maximum medical improvement with regard to her cervical spine disorder. The ALJ found the doctor's opinion inconsistent with his objective findings, and that his later opinion that plaintiff was capable of returning to work with no restrictions was significantly more persuasive as it was consistent with the doctor's objective findings. (R. 32-33).

Next, the ALJ, relying on the testimony of the vocational expert, at the hearing and through a written interrogatory, found that plaintiff could perform her past, semi-skilled light work babysitting older children. (R. 34). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 34-35).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does

not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build was is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and "logical bridge" between the evidence and the result."). *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate

the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

The plaintiff has advanced one argument for remanding the ALJ's opinion in this case. She argues that the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Lopez, thereby failing to create a "logical bridge" between the evidence and her RFC finding. Any other arguments she might have raised are, of course, deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

---

[2] By way of example, in the Seventh Circuit's recent ruling in *Jarnutowski v. Kijakazi*, 48 F.4th 769 (7th Cir. 2022), two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

Because plaintiff filed her claim after March 27, 2017, the Revisions to Rules Regarding the Evaluation of Medical Evidence apply. *See* 82 Fed. Reg. 5844, revised 82 Fed. Reg. 15132; *see also* 81 Fed. Reg. 62,560 (discussing proposed changes). *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). ALJs no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); see also 81 Fed. Reg. 62,560, 62,574 (discussing the proposed rule changes)("In addition to proposing to use the term 'persuasive' instead of 'weight' for medical opinions in 20 CFR 404.1520c and 416.920c, we also propose to use the term 'consider' instead of 'weigh' in 20 CFR 404.1520b and 416.920b.").

But, as before, "supportability" and "consistency" remain hallmarks of assessing medical opinions. *Albert*, 34 F.4th at 614:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Although ALJs must consider a number of additional factors, they need only explain how they considered supportability and consistency. 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). And, in so doing, they need only provide a *minimal articulation* of their reasoning. *Grotts*, 27 F.4th at 1276; *Deloney v. Saul*, 840 F.Appx. 1, 4 (7th Cir. 2020)("We will defer to an ALJ's decision to give a treating physician's opinion less than controlling weight if the ALJ considers the factors listed

under § 404.1527(c) and minimally articulates his reasoning."); *Elder*, 529 F.3d at 416 ("If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his *reasons—a very deferential standard that we have, in fact, deemed 'lax*.'")(Emphasis supplied).

Here, as already noted, Dr. Lopez stated that plaintiff was able to lift, carry, push, and pull objects up to 8 pounds and slowly climb up to five stairs at a time. (R. 579). The ALJ rejected that portion of the doctor's assessment, because it "was based upon a one-time examination and the balance of the evidence did not consistently document limitations in strength, ambulation, and climbing that would support such limitations." (R. 32). Of course, inconsistency with the medical evidence is a valid reason to reject a medical opinion. *Albert,* 34 F.4th at 614; *Prill v. Kijakazi*, 23 F.4th 738, 750–51 (7th Cir. 2022); *Zoch*, 981 F.3d at 602.

But, the plaintiff contends that the ALJ did not provide a legally sufficient explanation for why Dr. Lopez's opinion was out of step with the medical evidence. More specifically, the plaintiff argues that the ALJ's summary of the evidence is not enough to meet what the Seventh Circuit has called "h[er] minimal burden to articulate h[er] reasoning for crediting and discounting certain medical opinions." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *6 (7th Cir. Aug. 27, 2021); *see also Grove v. Kijakazi*, No. 21-1980, 2022 WL 1262131, at *2 (7th Cir. Apr. 28, 2022). It's not entirely clear what plaintiff is driving at. As the ALJ stated, in the March 2020 exam, Dr. Lopez, himself, found that range of motion in plaintiff's shoulders was only mildly limited, and her upper extremity strength and sensation was normal, as was her ability to grasp and manipulate objects. (R. 30, 578). There is obviously a gap between findings like "mild" and "normal" and a limitation to only lifting eight pounds. What more the plaintiff felt needed to be said is not apparent.

13

The plaintiff goes on to argue that the ALJ ignored evidence that would support Dr. Lopez's findings. [Dkt. #14, at 9-10]. In supposed support of this serious charge, she points to a cervical spine x-ray and a cervical spine MRI, and examination done immediately after the plaintiff's automobile accident in September-October 2018.[3] While an ALJ need not mention every piece of medical evidence in her opinion, she cannot ignore a line of evidence contrary to her conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir.2012). In this instance, the ALJ certainly did not ignore the cervical spine evidence; she specifically mentioned it in her Opinion. (R. 27 ("X-ray imaging noted disc degeneration with no protrusion or spinal stenosis at the C4-C7 vertebral levels and also noted degenerative endplate changes at the C4-C5 vertebral level."; ". . . October 8, 2018 MRI scan noted multilevel moderate spondylotic changes, specifically, a disc bulge at the C4-C5 vertebral level causing moderate foraminal and central canal stenosis, a disc bulge with a right paracentral herniation at the C3-C4 vertebral level causing mild to moderate neural foraminal and central canal stenosis, and a disc bulge at the C5-C6 vertebral level causing mild foraminal and central canal stenosis"). And the ALJ specifically found that plaintiff had a severe impairment of degenerative disc disease of the cervical spine.

If there is any ignoring of evidence going on, it is the plaintiff who is doing it; ignoring evidence about the *effects* of that impairment. An impairment is not necessarily disabling; diagnosis is not disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). What matters is the severity of the condition and how it limits plaintiff's

---

[3] Plaintiff also points to a December 16, 2019 diagnosis of a sprained ankle. But at her examination with Dr. Lopez over a year later, she mentioned no ankle issues. (R. 576).

14

capacity to work based on clinical and/or laboratory findings. *See Elder*, 529 F.3d at 415 ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity...."). According to Dr. Lopez, range of motion in plaintiff's shoulders *and* cervical spine was only mildly limited; strength was 5/5. (R. 578). Plaintiff's gait was only slightly antalgic. (R. 578).

Findings like "mild" and "normal" and "5/5" come up frequently and rather consistently in the medical record (R. 381-82, 383, 394, 590, 821-22, 848, 849, 973, 896, 917, 934, 1129, 1133), as the ALJ noted. (R. 27-28). And the ALJ did point these findings out. The plaintiff seems to think that, too, is inadequate, complaining that all the ALJ did was summarize the record. But, "[s]ummaries of medical evidence, while definitionally 'partial and selective,' are appropriate" *Grotts*, 27 F.4th at 1278; *Gedatus*, 994 F.3d at 901, and often compelling. Again, findings like "normal", "mild" and "5/5 strength" clearly don't support the restrictions that Dr. Lopez found. An elaborate thesis from the ALJ as to why is completely unnecessary.

That's not to say that there aren't any findings in the record that support Dr. Lopez's restrictions or plaintiff's claim for disability. Of course, there almost always evidence in favor of the plaintiff in these cases, or else plaintiff's attorneys would be filing frivolous appeals. But, that's where the "substantial evidence" standard comes in. "Substantial evidence" can be less than a preponderance of the evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022); *Metro-N. Commuter R.R. Co. v. United States Dep't of Lab.*, 886 F.3d 97, 106 (2nd Cir. 2018). So,

15

there is certainly "substantial evidence" – perhaps even a preponderance of evidence – to support the ALJ's rejection of Dr. Lopez's opinion. At bottom, the plaintiff wants the court to reweigh the foregoing evidence in her favor. But that's something the court is not allowed to do, and for good reason. *Gedatus*, 994 F.3d at 900; *Karr*, 989 at 513; *Zoch*, 981 F.3d at 602.

It was most likely a boon to plaintiff and her daughter when the state of Illinois paid plaintiff to keep an eye on her grandchildren, make their lunches, and get them off to school while her daughter worked. But, the state of Illinois paid plaintiff enough and plaintiff did it long enough, that it qualified as "past relevant work." 20 C.F.R. § 416.960(b)(1). It doesn't matter that the "past relevant work" doesn't exist anymore. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003); *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). As such, when plaintiff sought disability benefits, it was her burden to present medical evidence to prove she was no longer able to do that kind of work. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022); *Gedatus*, 994 F.3d at 905; *Karr*, 989 F.3d at 513 (7th Cir. 2021); *Zoch*, 981 F.3d at 601. In the main, the medical record, as already discussed, shows mild limitations, normal strength, and normal gait. The ALJ didn't think there was enough there to show plaintiff was no longer capable of taking care of a couple of kids. The plaintiff may disagree, but "substantial evidence" clearly supports the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #15] is granted and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/20/22